**NORTHWESTERN MUTUAL LIFE IN-SURANCE COMPANY, Appellant,**

v.

**UNITED STATES NATIONAL BANK OF OMAHA, Appellee.**

**No. 16162.**

United States Court of Appeals
Eighth Circuit.

June 10, 1959.

John E. North, Omaha, Neb. (Young, Holm & Miller, Omaha, Neb., on the brief), for appellant.

Edgar M. Morsman, Omaha, Neb. (Morsman, Maxwell, Fike & Sawtell, and Harvey D. Davis, Omaha, Neb., on the brief), for appellee.

Before GARDNER, Chief Judge, and JOHNSEN and VOGEL, Circuit Judges.

GARDNER, Chief Judge.

The United States National Bank of Omaha brought this action against Northwestern Mutual Life Insurance Company to recover the face amount of a $100,000.00 five-year term life insurance policy which it had acquired by assignment by insured and the named beneficiary. The parties will be referred to as they were designated in the trial court.

In its complaint plaintiff in effect alleged that the policy in suit was issued to the insured June 6, 1955, by defendant. Premiums were paid to June 2, 1956. On June 2, 1957, there was a dividend in the amount of $458.00 due the insured which was sufficient to pay a quarterly premium in the amount of $326.00. The insured had elected to have dividends applied toward reduction of current premiums. Therefore, the policy was in full force and effect when the insured died, July 13, 1957. Plaintiff prayed for judgment of $100,000.00, the face amount of the policy, plus $132.00, the balance of the dividend due after payment of a quarterly premium, together with six per cent interest and attorney's fees.

In its answer defendant admitted the issuance of the policy and the payment of quarterly premiums by the insured to June 2, 1956, and affirmatively alleged that on or about June 2, 1956, the insured changed the premium payment period thereon from a quarterly to an annual basis and paid an annual premium of $1,266.00. In May of 1957 defendant notified the insured that an annual premium would be due June 2, 1957, and that the policy would lapse for nonpayment of premiums if the premium were not paid before expiration of the grace period. The insured and plaintiff failed to pay the annual premium, and the policy in suit lapsed before the insured's death. The $458.00 dividend which had accrued on said policy was insufficient to pay the annual premium and was tendered by defendant to plaintiff and the beneficiary jointly. This tender, which was refused, has been kept good by defendant. Consequently defendant prayed for dismissal of the complaint.

The basic facts were stipulated and hence are not in dispute, but the controversy arises over what inferences may be drawn from the admitted facts.

On the facts as stipulated by the parties the court entered Findings of Fact and Conclusions of Law. So far as the facts are here pertinent the Findings are as follows:

"1. On June 2, 1955, J. P. Byrne & Sons Co. and Charles F. Byrne executed an application for life insurance in the sum of One Hundred Thousand ($100,000.00) Dollars on the life of Charles F. Byrne with the defendant. The application requested quarterly premiums and directed that annual dividends be applied towards the reduction of current premiums due.

"2. On June 6, 1955, but as of June 2, 1955, the policy for $100,000.00 was issued by the defendant and delivered to J. P. Byrne & Sons

Co. 'in consideration of the payment of a first premium of $304.-00 * * * and the payment of a premium of a like amount at the end of every three policy months after the policy date, June 2, 1955.' (An extra $22.00 premium for waiver of premiums in event of total and permanent disability, provided in the policy, made the total actual quarterly premium $326.00.)

"3. Inside the policy, on page 3, is found:

" '8(b) Frequency. Premiums may be paid on an annual, semi-annual, or quarterly basis at the published rates in use by the Company on the date of issue. Change may be made on any policy anniversary.' and

" '10(b) Option. Each dividend payable may be:

" '(1) applied toward the payment of a premium hereon;

" '(2) left to accumulate with interest credited annually at such rate, not less than two per cent per annum, as may be determined by the Company, subject to withdrawal or payable as part of the proceeds of this Policy; or

" '(3) paid in cash. Unless one of the foregoing options has been elected in writing, this option shall apply.'

"4. On May 29, June 1 or June 4, 1956 (all three dates appearing on the Assignment), the above mentioned policy was assigned by the J. P. Byrne & Sons Co. to Charles F. Byrne, the insured, and the direct beneficiary was changed to be Henrietta N. Byrne, wife of the insured.

"5. On March 21, 1957, the insured, Charles F. Byrne, and the beneficiary, Henrietta N. Byrne, assigned all their interest in the policy to the plaintiff.

"6. Quarterly premiums on the policy were paid on or about September 2, 1955, December 2, 1955, and March 2, 1956. On or about June 19, 1956, a premium of $1,-266.00 (consisting of $860.00 cash and $406.00 of dividend) was paid by the insured, the owner of the policy, to the defendant. This payment constituted an annual premium covering the period from June 2, 1956 to June 2, 1957.

"7. On June 2, 1957, there was due from the defendant to the insured, or to the plaintiff, the sum of $458.00 as an anniversary dividend on said policy; this sum was never paid by the defendant to anybody, except that it was tendered by the defendant to the plaintiff and Henrietta N. Byrne by a joint check on July 29, 1957.

"8. There was never any change made in the direction that the dividends should be applied toward reduction of current premiums.

"9. Neither the insured nor the plaintiff had ever given any verbal or written request or suggestion to the defendant as to any change of the frequency of premium payments.

"10. Charles F. Byrne died on July 13, 1957, and due proof of death was furnished to the defendant. * * * "

On the facts so found the court concluded as a matter of law:

"1. The evidence offered by the defendant (found in paragraphs 8 and 9 of the Stipulation filed by the parties herein) to the effect that defendant sent to the insured an annual premium notice on or about May 1, 1957, demanding a premium of $1,266.00 and to the effect that the defendant had marked its internal records kept at its office in Milwaukee, Wisconsin to show that premiums due on said policy were of an annual frequency is not admissible, or if admissible, is in no way binding upon the plaintiff or the insured.

"2. The life insurance policy in this suit did not lapse for nonpayment of premiums.

"3. On June 2, 1957, a policy anniversary date, the defendant had in its possession sufficient unapplied dividends presently due to pay the stipulated quarterly premium.

"4. The mere payment of one annual premium on a policy requiring the payment of premiums quarterly in the manner provided in the policy in suit does not, of itself, change the terms of the insurance contract and thereafter require the insured to pay annual premiums. * * *"

The court entered judgment in favor of plaintiff pursuant to its Findings of Fact and Conclusions of Law.

Defendant seeks reversal on the following grounds: (1) The trial court erred in failing to find that the insured had elected to pay premiums on an annual basis and that on June 2, 1957, an annual premium was due because the evidence conclusively establishes such facts, and (2) the trial court erred in entering judgment for plaintiff because the evidence conclusively establishes that the policy upon which plaintiff's claim was based lapsed for nonpayment of premiums. The accrued dividends on June 1, 1957, were insufficient to pay the annual premium due and defendant could not apply these dividends in partial payment of the premium due in the absence of a tender of the balance.

It is clear that the owner of the policy, both in his application for the policy and in the policy itself, indicated his election to pay the premium quarterly. This is shown by the physical facts. It was so plainly printed on the face of the policy and also on the application for the policy. Following this election at least four quarterly payments of premiums were made. These four installments paid the premiums for one year. At the time for paying the first quarterly premium for the second year the owner of the policy made an annual payment and thereby reduced the premium cost by $38.00. This he had a right to do under the terms of the policy and there was nothing in the provisions of

the policy indicating that by so doing he thereby changed the terms of the policy by which he was privileged to pay the premiums quarterly. There was no notice, in writing or otherwise, that he had changed the terms of the insurance contract by which he had the privilege of making quarterly payments.

■■ It is urged by defendant that the court erred in not finding as a fact that the insured had elected to pay premiums on an annual basis because the evidence conclusively established such fact. The evidence is not in dispute. The decision being in favor of the plaintiff, it is entitled to all such favorable inferences as may reasonably be drawn from the facts and circumstances proven. From the facts and circumstances it is certainly as reasonable to infer that the insured paid the annual premium because at the time he was in funds to do so and that by so doing he reduced the premium cost and, manifestly, it was not a necessary inference that by making this annual premium payment he thereby relinquished his contract right to make quarterly premium payments. We are of the view that the insurance contract is susceptible of the construction for which plaintiff contends, and it is a cardinal principle of insurance law that a policy or contract of insurance is to be construed liberally in favor of insured or his beneficiary and strictly as against insurer. If uncertain or ambiguous, it was the fault of the defendant and not the plaintiff. Moore v. Pacific Mutual Life, 128 Neb. 605, 259 N.W. 916; Oswald v. Equitable Life Assurance Soc. of United States, 128 Neb. 173, 258 N.W. 41. On this phase of the case we conclude that the trial court was correct in holding that the owner of the policy, notwithstanding the fact that he had made an annual payment of premium, had the right as provided in his contract of insurance thereafter to make quarterly payments.

■ As has been heretofore noted, under the insurance contract the insured was entitled to have any dividends ac-

crued applied toward reduction of current premiums. This provision was confessedly in force at the time of the insured's death. These dividends amounted to $458.00. The first quarterly premium amounted to $326.00. The insured died before the second quarterly premium was payable. If, as was the duty of the defendant, the dividend be applied to the payment of the first quarterly premium, the policy was not subject to forfeiture or lapse for failure to pay the premium up to and including the time of insured's death. The applicable rule is succinctly stated in 45 C.J.S. Insurance § 623, p. 478 as follows:

"As a general rule a life insurance company cannot forfeit the policy for nonpayment of premium when it has in its possession dividends presently due insured which are sufficient to pay the premium, but it must apply the dividends to the payment of the premium, unless under the terms of the policy or by direction of insured himself the company is required to use the dividends for a purpose other than the payment of premiums."

Indeed, we think the policy could not be forfeited for nonpayment of premium if the insurance company at the time were in any way indebted to the insured in an amount equal to or greater than the amount owing for the payment of the premium. Conrad v. Midwest Coal Co., Iowa, 3 N.W.2d 511.

We have considered all other contentions urged by defendant but think them without merit.

Plaintiff, in addition to seeking affirmance of the judgment appealed from, asks us to assess as part of costs attorney's fees for services on appeal. In view of the very liberal allowance of attorney's fees by the trial court and embodied in the judgment appealed from, we are of the view that no further attorney's fees should be taxed against defendant on this appeal.

The judgment appealed from is affirmed.